USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/30/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
    UNITED STATES OF AMERICA,

                    -against-

    COLIN AKPARANTA,
                                  Defendant.
------------------------------------------------------------- X

19 Cr. 363 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

        Defendant Colin Akparanta seeks (1) suppression of all physical evidence seized pursuant to an October 15, 2018 search warrant; (2) disclosure of the names and other information about the four victims identified in the indictment; (3) access to and permission to photograph the second floor women's unit of the Metropolitan Correctional Center ("MCC") for himself, his counsel and an investigator; (4) production of all Bureau of Prison ("BOP") records concerning the aforementioned victims and all reports of alleged abuse; and (5) the early disclosure of 3500, *Brady*, *Giglio* and trial exhibits and witness lists. For the reasons below, the motions are denied.

### I. MOTION TO SUPPRESS

        Defendant Akparanta was indicted on May 20, 2019, and charged with four counts of sexual abuse of a ward in violation of 18 U.S.C. § 2243(b), four counts of abusive sexual contact in violation of 18 U.S.C. § 2243(a)(4), and one count of deprivation of civil rights in violation of 18 U.S.C. § 242.

    **A.    Background**

        1.  **Warrant**

On October 15, 2018, Magistrate Judge Gabriel Gorenstein signed a warrant authorizing

the search of (1) the locker assigned to Defendant at MCC; and (2) Defendant's person, including any personal effects, cellphones and electronic devices within his possession, custody and control at the time the warrant is executed. The warrant authorized the seizure and forensic examination of any cellphones in his possession and seizure of items "consist[ing] of . . . evidence, fruits, and instrumentalities" of the subject offenses, as described in six categories.

The warrant also includes procedures for reviewing electronically stored information ("ESI"), which authorizes a review "for information responsive to the warrant." The warrant specifies certain techniques to locate information responsive to the warrant, including examples such as "surveying . . . file 'directories;'" "opening or cursorily reading the first few 'pages' of such files in order to determine their precise contents;" "scanning storage areas;" "performing key word searches;" and "reviewing metadata." The warrant further provides that "[l]aw enforcement personnel will make reasonable efforts to search only for files . . . within the categories identified . . . . However, law enforcement personnel are authorized to conduct a complete review of all the ESI . . . if necessary to evaluate its contents and to locate all data responsive to the warrant."

### 2. Affidavit in Support of the Warrant

In applying for the warrant, Special Agent Stefano Braccini ("Braccini") submitted a sworn affidavit (the "Affidavit") based upon, among other things, his personal knowledge, and "[his] training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis" of ESI.

The section of the Affidavit addressing probable cause that Defendant committed the Subject Offenses describes the statements of a cooperating witness, referred to as Cooperating Witness – 1 or "CW-1," "who is providing information following CW-1's arrest on federal

charges, in the hope of entering into a formal cooperation agreement with the United States Attorney's Office for the Southern District of New York." The Affidavit prefaces the recitation of the information received by stating, in a footnote, that "[t]he information provided by CW-1 thus far has been reliable and corroborated by other evidence, including NYPD reports, witness interviews, and video surveillance, among other evidence."

The information in the Affidavit provided by CW-1, a former inmate at the MCC, specifically relates to her interactions with a corrections officer ("CO") at the MCC. CW-1 stated that this CO was regularly assigned to CW-1's housing unit; the CO had "a long name of African-origin, and that CW-1 knew the Officer as 'AK;'" and the CO had previously been under investigation. Additionally, CW-1 provided a physical description of the CO and the hours he typically worked. Based on this information and on a review of BOP employee records, including photographs, Braccini concluded that Defendant was the CO to whom CW-1 referred because he was assigned to CW-1's housing unit, CW-1's description matched the CO, and "AK" are the first two letters of Defendant's last name. CW-1 made the following statements relevant to the issues at hand:

- Between January and April 2018, while CW-1 was an inmate at the MCC, a CO brought her items of contraband. At the CO's direction, CW-1 wrote the requested contraband on a note and gave it to the CO. The CO brought contraband items into the MCC for other inmates as well and, with at least one other inmate, used the same process of having the inmate write the requested contraband on a note for the CO.

- Several times per week during this time, the CO engaged in sexual activity with CW-1, including touching CW-1's breasts and buttocks and digitally penetrating

CW-1 vaginally in the office in the inmate unit (the "Bubble"). The CO engaged in sexual activity with at least one other inmate around the same time that the CO engaged in sexual activity with CW-1. The CO asked CW-1, on many other occasions, to take off her clothing in her cell so he could observe her. CW-1 heard the CO make the same request of other inmates.

- CW-1 observed the CO with a cell phone inside the Bubble. According to Braccini, COs are not permitted to have cellphones inside secured areas, such as inmate housing areas. The CO also asked CW-1 for a phone number of one of CW-1's family members and discussed having a relationship with CW-1 after she was released from prison. CW-1 provided an out-of-date number for that family member to the CO.
- CW-1 pulled up pictures of herself on the BOP computer located in the Bubble so the CO could observe them. CW-1 had previously posted such photographs on Instagram, but CW-1 could not access Instagram on the computer. The CO knew CW-1's Instagram handle.

The section of the Affidavit addressing probable cause to search Defendant's locker explains, based on Braccini's communication with an MCC official, that male staff of the MCC often utilize the locker room before they enter and after they exit the secured inmate areas. Based on that, the Affidavit asserts that there is probable cause that Defendant's locker contains evidence relating to Defendant's sexual abuse of inmates, including contraband for, and notes from, inmates.

The section of the Affidavit addressing probable cause justifying the search of Defendant's person states that, "[b]ased on [Braccini's] participation in the investigation,

including [his] communications with CW-1, and [his] training and experience," Braccini believes that Defendant is in possession of evidence of the Subject Offenses, including on his cellphone. The Affidavit states that, because Defendant had asked CW-1 for a phone number; had learned CW-1's Instagram handle and expressed interest in CW-1's photographs on Instagram; and had been observed with a cellphone in the Bubble, contrary to MCC rules and where he reportedly engaged in sexual activity with CW-1, Braccini believes that Defendant used or attempted to use his cellphone in furtherance of the Subject Offenses.

Finally, Braccini asserts, in the section of the Affidavit addressing probable cause justifying the search of ESI, that based on his training and experience, "individuals who engage in offenses involving sexual abuse commonly use computers to communicate with victims or family members of victims, store contact information of victims and victims' family members, and keep a record of purchases made for and involving victims." Additionally, "individuals engaged in smuggling contraband into prison frequently use electronic media, including cellphones, to communicate regarding" such activity. Finally, Braccini states that evidence of such activity can be found months or even years after it occurred since "users [] have little incentive to delete data;" even when deleted, data can often be recovered; and when a user changes computers, the user will typically transfer files from the old computer to the new computer to avoid losing data.

    **B.**    **Motion to Suppress Fruits of the Search[1]**

        **1. Probable Cause**

---

[1] The Government argues that Defendant may lack standing to challenge the searches, but does not provide facts necessary to assess standing, including information regarding MCC policy, the lock(s) on the locker, and the location of Defendant when he was searched. Defendant's standing to challenge the searches need not be reached since Defendant is unsuccessful on the merits.

Defendant argues that the warrant lacked probable cause because (1) the information in the Affidavit was stale; (2) the Affidavit did not sufficiently establish probable cause that evidence of the suspect offenses would be at the locations searched; and (3) there was no basis for Judge Gorenstein to find CW-1 reliable, and the omission of CW-1's criminal history requires that a hearing be conducted pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). For the following reasons, the search warrant was supported by probable cause and Defendant's arguments are unpersuasive.

### a. Standard

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV. A determination of probable cause is made through a "totality-of-the-circumstances analysis," which requires "only the probability, and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983); *accord United States v DiTomasso*, 932 F3d 58, 66 (2d Cir. 2019) (probable cause requires only "a fair probability that contraband or evidence of a crime will be found in a particular place.") (internal quotation marks omitted)). "This determination requires only 'a *practical, common-sense decision*' as to that probability, 'given all the circumstances set forth in the affidavit.'" *DiTomasso*, 932 F.3d at 66 (quoting *Gates*, 462 U.S. at 238). "[A] search pursuant to a warrant issued by a judicial officer upon a finding of probable cause is presumptively reasonable . . . ." *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017). Once a warrant is issued, a magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 at 236. "[T]he duty of a reviewing court is

simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id*. at 238–39 (alteration in original).

### b. The Information in the Affidavit Was Not Stale

Defendant argues that, because CW-1 left the MCC in April 2018 and the warrant was issued in October 2018, the information provided by CW-1 was too old to justify a conclusion that evidence of the alleged crimes would be found at the time of the warrant. Defendant's argument lacks merit.

"The law recognizes no bright-line rule for staleness, which must instead be evaluated on the basis of the facts of each case." *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015) (internal citation and quotation marks omitted); *accord United States v. Davis*, No. 17 Cr. 610, 2018 WL 4373998, at *8 (S.D.N.Y. Sept. 13, 2018). "The two critical factors in determining staleness are the age of the facts alleged and the nature of the conduct alleged to have violated the law." *Raymonda*, 780 F.3d at 114 (citation and quotation marks omitted).

The Affidavit provides a reasonable basis to believe that evidence would be found in October 2018 of crimes that had been committed six or more months earlier. The Affidavit states that Defendant requested and obtained a phone number of CW-1's family member so that he could contact her after she was released; that he expressed an interest in photographs of CW-1 and knew her Instagram handle; and that he used his cellphone in a secure area of the facility where he allegedly engaged in sexual activity with inmates. The Affidavit further states that "individuals engaged in smuggling contraband into prisons frequently use electronic media, including cellphones, to communicate regarding their illegal activity." Finally, the Affidavit states that, based on Braccini's training and experience, "evidence of criminal activity [stored electronically] can often be found months or even years after it occurred" for multiple reasons --

7

the low cost of data storage, the fact that deleted data can be recovered months or years later, and the common practice to transfer data from an old device to a new device when the old device is replaced. The opinion of law enforcement agents, based on their training and experience, can contribute significantly to a finding of probable cause. *See, e.g.*, *Ganek*, 874 F.3d at 85 (finding probable cause for a search warrant based in part on an agent's training and experience that participants in insider trading frequently maintain paper and electronic evidence of their illegal activity); *United States v Steppello*, 664 F3d 359, 362 (2d Cir. 2011) (same as to training and experience to interpret cryptic communications about drug trafficking). These facts in combination with Braccini's opinion based on his training and experience create "a fair probability" that Defendant may have stored on his cell phone telephone numbers, communications and photographs that are evidence of the alleged crimes.

The Affidavit also establishes a "fair probability" that the search would uncover evidence of more recent criminal activity involving victims in addition to CW-1. The Affidavit reports that CW-1 observed and was aware of Defendant engaging in sexual activity with at least one other inmate, and describes a system by which Defendant brought contraband into the facility for CW-1 and other inmates. "Where the affidavit establishes a pattern of continuing criminal activity, such that there is reason to believe that the cited activity was probably not a one-time occurrence, the passage of time between the last alleged event and the warrant application is less significant." *Raymonda*, 780 F.3d at 114 (quotation marks omitted).

Based on the Affidavit, Judge Gorenstein had a "substantial basis" to conclude that Defendant's locker and cell phone would contain relevant evidence, despite the transfer of CW-1 six months earlier. *See, e.g., Davis*, 2018 WL 4373998, at *8 (finding probable cause for a warrant to search a cell phone more than five months after Defendant allegedly sold narcotics to

8

a cooperating witness); *United States v. Pizarro*, No. 17 Cr. 151, 2018 WL 1737236, at *10 (S.D.N.Y. Apr. 10, 2018) (finding probable cause for a warrant to search an automobile used in crime six months earlier); *United States v. Feng Ling Liu*, No. 12 Cr. 934, 2014 WL 101672, at *4 (S.D.N.Y. Jan. 10, 2014) (finding probable cause for a warrant to search a law firm's electronic files where it was unclear how much time had passed since the alleged observations of the confidential witnesses).

### c. There Was Probable Cause to the Search Defendant's Locker and Cell Phone

Contrary to Defendant's argument, the Affidavit provides a substantial basis to find probable cause to search Defendant's cell phone and locker. Probable cause requires only "a fair probability that contraband or evidence of a crime will be found in a particular place." *DiTomasso*, 932 F3d at 66 (internal quotation marks omitted). This standard was met here.

First, the Affidavit establishes probable cause that evidence of Defendant's alleged crimes would be found in his MCC locker. The Affidavit asserts that the alleged victims provided Defendant with notes of their wish list of contraband that he then procured for them, and that "the male staff of the MCC often utilize the locker room before they enter and after they exit the facility." The proximity of the locker to the alleged crimes, Defendant's ready access to it and exclusive use of it, all create a "fair probability" that evidence of the alleged crimes, such as contraband and related notes, would be stored there.

Similarly, the Affidavit establishes probable cause to search Defendant's cellphone. The Affidavit asserts that individuals who engage in sexual abuse commonly save in digital form contact information, communications, and records of transactions related to their victims, and that individuals who transport contraband into corrections facilities often use cellphones to communicate regarding the contraband. The Affidavit also asserts that (1) Defendant had been

9

observed using his cellphone in the location where some of the alleged sexual activity with inmates had occurred; (2) Defendant had collected a phone number from CW-1; and (3) Defendant had expressed an interest in, and knew, CW-1's Instagram account, which was not accessible via the available BOP computer. Together these allegations create a "fair probability" that Defendant's cellphone would contain evidence of his alleged criminal activity.

Under the totality of the circumstances, and "'resolv[ing] any doubt about the existence of probable cause in favor of upholding the warrant,'" *Pizarro*, 2018 WL 1737236, at *9 (quoting *United States v. Salameh,* 152 F.3d 88, 113 (2d Cir. 1998)), the Affidavit provided a "substantial basis" for Judge Gorenstein to find probable cause to warrant the search. *See Gates*, 462 U.S. at 238–39.

### d. Judge Gorenstein Had a Substantial Basis for Concluding CW-1 Was Credible

Defendant argues that the Affidavit provided no basis for Judge Gorenstein to determine that the information provided by CW-1 was reliable, but this is incorrect. "[I]n assessing whether there is probable cause based upon a confidential informant's reports, courts must look to *all* of the circumstances bearing upon the information's reliability." *McColley v. County of Rensselaer*, 740 F.3d 817, 826 (2d Cir. 2014). Here, the Affidavit provided sufficient basis to find CW-1 credible.

First, the information CW-1 provided came from her first-hand observations as the victim of a crime, and included significant detail regarding the alleged criminal activity. Although not dispositive, this weighs in favor of CW-1's reliability. *See Gates*, 462 U.S. at 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d

Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists [for arrest], unless the circumstances raise doubt as to the person's veracity." (internal citation omitted)); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed.").

Second, CW-1's report was not made anonymously, but rather made to Braccini in the hopes of entering a formal cooperation agreement. This again weighs in favor of her credibility; CW-1 risked losing any cooperation agreement if her allegations were found to be false. *See Steppello*, 664 F.3d at 366 (noting that a criminal informant "was motivated to be truthful to receive leniency" as evidence of reliability); *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) ("[A] face-to-face informant must . . . be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false."). That the Affiant -- an experienced law enforcement officer -- found CW-1 credible is also entitled to some weight. *See, e.g., Escalera v. Lunn*, 361 F.3d 737, 746 (2d Cir. 2004).

Finally, the Affidavit asserted, admittedly in a footnote and without elaboration, that CW-1's information "thus far has been reliable and corroborated by other evidence, including NYPD reports, witness interviews, and video surveillance, among other evidence." "Corroboration requires an 'assessment of probabilities.'" *United States v. Canfield*, 212 F.3d 713, 720 (2d Cir. 2000) (citing *Gates,* 462 U.S. at 232). That CW-1's information was corroborated by NYPD reports, witness interviews, and video surveillance is significant evidence of reliability. Although the Affidavit does not indicate which information was corroborated, even assuming the corroboration was of minor or innocent behavior, "an informant who is right about some facts is

11

more likely to be right about others." *Steppello*, 664 F.3d at 365 (quoting *Gagnon*, 373 F.3d at 236); *accord Canfield*, 212 F.3d at 720 ("Even if these are innocent details, we look to these other facts, because if CI–1 was truthful about some part of the story, there is a higher probability the incriminating facts are true . . . .") Additionally, although "a criminal informer is less reliable than an innocent bystander with 'no apparent motive to falsify,'" *Gagnon*, 373 F.3d at 236 (citation omitted), the very nature of the purported crime here -- the sexual abuse of inmates -- necessarily involves a victim with a criminal history, and necessarily reduces the number of corroborating witnesses and documents accessible without a search warrant. Ultimately, under the totality of the circumstances, Judge Gorenstein had a substantial basis to find CW-1 reliable.

### e. A *Franks* Hearing is Not Warranted

Defendant argues that the Affidavit omitted material information by failing to provide CW-1's criminal history, and that this omission requires a *Franks* hearing. To mandate a *Franks* hearing, the challenger must allege "deliberate falsehood or [] reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. If the challenger makes this showing, he is then entitled to a *Franks* hearing only "if the remaining content [in the affidavit] is insufficient" for a finding of probable cause. *Id*. at 172.

The Affidavit makes clear that CW-1 has a criminal history by its identification of her as an inmate in the MCC, but does not specify the charges against her. Courts have held that probable cause can exist where an informant's criminal history is omitted. *See, e.g. Canfield*, 212 F.3d at 720 (finding an affidavit supported probable cause to issue a warrant despite omission of confidential informant's criminal history); *accord United States v. Morgan*, No. 17 Cr. 354, 2017 WL 4621632, at *5 (S.D.N.Y. Oct. 12, 2017) ("[T]here is no requirement for the

search warrant application to disclose an informant's criminal history."). "CW-1" is intentionally not identified by name or other identifying details in the Affidavit, presumably to protect her anonymity as both an informant and an alleged victim of Defendant's crime. *See Canfield*, 212 F.3d at 719 (observing, where an informant's criminal record was omitted from an affidavit, that "inclusion of [the informant's] criminal record could have compromised his/her anonymity."); *see also Rivera v. United States*, 928 F.2d 592, 604–05 (2d Cir. 1991) ("So long as law enforcement agents present adequate information to permit the magistrate to conclude that there is probable cause and do not suppress facts that would cast doubt on its existence, they may properly exclude information that would unduly risk revealing a confidential informant's identity and exposing him or her to harm."). In these circumstances, the omission of CW-1's criminal history from the Affidavit is not evidence of either a "deliberate falsehood" or an "offer of proof" sufficient to warrant a *Franks* hearing. *See United States v. Mazella*, No. 11 Cr. 300, 2011 WL 13128202, at *1 (E.D.N.Y. Aug. 9, 2011), *aff'd*, 519 F. App'x 24, 25 (2d Cir. 2013) (where the affidavit in support of a search warrant omitted a witness's conviction for possession of stolen mail and there was "no evidence whatsoever of intentional falsehood," this was "not enough to satisfy *Franks*.").

### 2. The Warrant Was Sufficiently Particular

Defendant argues that the warrant was not sufficiently particularized as to the search of his cell phone, but this argument is unpersuasive. A search warrant must "describe with particularity the place to be searched and the items to be seized." *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015). Here, the warrant satisfies the basic elements of the particularity requirement; it incorporates the Affidavit by reference, lists the charged crimes, describes the place to be searched (the cellphone), and specifies twelve categories of data to be

13

collected as evidence, fruits and instrumentalities of the subject offenses. *See United States v. Ulbricht*, 858 F.3d 71, 101 (2d Cir. 2017) (observing that "the warrant plainly satisfies the basic elements of the particularity requirement" because the warrant "lists the charged crimes, describes the place to be searched, and designates the information to be seized in connection with the specified offenses.").[2] Where warrants authorize the seizure of evidence pursuant to illustrative categories, "[c]ourts routinely validate [them] in the face of particularity challenges, reasoning that an illustrative list, coupled with a reference to the crimes for which evidence is sought, supplies sufficiently limiting guidance." *United States v. Mendlowitz*, No. 17 Cr. 248, 2019 WL 1017533, at *10 (S.D.N.Y. Mar. 2, 2019) (citing cases).

Defendant argues that the warrant's data review protocol effectively renders the warrant to search his cellphone an impermissible "general warrant," illustrated by the Government's review of his WhatsApp messages -- which led to the Government to seek an additional warrant. But "[a] warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement." *Ulbricht*, 858 F.3d at 102. Here, the Government followed appropriate procedure in seeking another warrant when the initial data review revealed evidence of an unrelated crime, and that warrant is not at issue here.

The warrant's data review protocol is not a basis for suppression. The protocol permits the Government to acquire the cell phone and then review its contents for information responsive

---

[2] Defendant specifically cites *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), in support of his argument, but that case is factually different from this one. There, the warrant failed to identify any suspected crimes, "set forth expansive categories of generic items subject to seizure without . . . link[ing] to the suspected criminal activity," and lacked temporal limitation. *Id*. at 385.

to the warrant.[3] The Second Circuit has acknowledged the difficulties inherent in searching electronic data for evidence of specific crimes without conducting a wide review of all data collected:

> [B]ecause there is currently no way to ascertain the content of a file without opening it and because files containing evidence of a crime may be intermingled with millions of innocuous files, by necessity, government efforts to locate particular files will require examining a great many other files to exclude the possibility that the sought-after data are concealed there.

*United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (alterations and quotation marks omitted). In *Ulbricht*, 858 F.3d at 102, the court approved a warrant that contained similar instructions for ESI review as those found here and observed "it will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place . . . ." The scope of ESI review that the protocol here permitted -- "a complete review of all ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant" -- has been found permissible regardless of the type of crime alleged. *See, e.g. United States v. Gatto,* 313 F. Supp. 3d 551, 559 (S.D.N.Y. 2018) (finding a warrant to search cellphones of defendants charged with wire fraud conspiracy sufficiently particular where, depending on the circumstances, it permitted the Government to examine "all of the seized data to evaluate its contents and determine whether the data is responsive to the warrant."); *see also United States v. Dawkins*, No. 17 Cr. 684, 2019 WL 2464924, at *7 (S.D.N.Y. May 23, 2019) (denying a motion to suppress evidence found on cell phones of Defendants charged with conspiracy, bribery and wire fraud because, "[t]he fact that the warrant authorized law enforcement agents to access all the data on the phone does not

---

[3] The procedure recommends certain techniques that can be used, but ultimately authorizes a "complete review of all the ESI from seized devices . . . if necessary to evaluate its contents and to locate all data responsive to the warrant."

automatically render it overbroad."). Defendant raises no evidence to justify a different holding here.

### 3. The Good Faith Exception Applies

Even when probable cause is lacking, the evidence is not automatically suppressed. Rather, an analysis must be done under the good faith standard, and the evidence is suppressed only in one of the following circumstances:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; [or] (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Raymonda*, 780 F.3d at 118 (quotation marks omitted); *accord Davis*, 2018 WL 4373998, at *8. None of these circumstances are present here.

Defendant argues that the omission of CW-1's criminal history, and the warrant's lack of particularity as it relates to the search of the cell phone, each were so facially improper that no reasonable law enforcement agent could have relied on the warrant. But as discussed *supra*, the omission of CW-1's criminal history does not preclude probable cause, and the use of a data review protocol which authorizes a complete review of ESI to locate data responsive to the warrant is not grounds for suppression. Additionally, "[s]uppression is 'our last resort, not our first impulse.'" *Bershchansky*, 788 F.3d at 112 (quoting *Hudson v. Michigan,* 547 U.S. 586, 591 (2006)). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ." *United States v. Clark*, 638 F.3d 89, 103 (2d Cir. 2011) (quoting *United States v. Leon,* 468 U.S. 897, 922 (1984)); *accord United States v. Falso*, 544 F.3d 110, 129 (2d Cir. 2008) (declining to hold that agents acted unreasonably in relying on judge's probable cause determination because "the error . . . was committed by the district court in

issuing the warrant, not by the officers who executed it."). Here, even if probable cause was lacking -- and it was not -- it was not so lacking that reliance was unreasonable. Suppression is not warranted.

### C. Motion for Victim Names and Information, Access to the MCC, and a Scheduling Order

Defendant's additional requests are denied as premature and/or moot. First, Defendant and the Government have come to an agreement regarding the timeline by which the Government will produce the identities of the victims, and 3500 and *Giglio* materials pertaining to the victims, rendering moot the motion for the Court to direct the Government to provide the names and other pertinent information regarding the four named victims in the indictment, including their BOP records.

Second, Defendant's request for access to the MCC is denied as premature because the Government does not object to such a visit, and because negotiations between the Government, MCC's legal counsel and Defendant are ongoing.

Finally, Defendant has provided no justification for his request to set a schedule for the production of witness lists, jury instructions and proposed 404(b) evidence before the trial is scheduled. A scheduling order will be issued when the date is set for a trial.

## II. CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED as follows: the application to suppress is denied; the application for victim names and information is denied as moot; the applications for access to the MCC and for a scheduling order are denied as premature.

The Clerk of Court is respectfully directed to close the motion at Docket No. 26.

Dated: October 30, 2019
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE